# EXHIBIT A

## CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

This CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT ("Agreement") is made effective as of 5th day of October, 2018, by and between TriMark Raygal, LLC, a California limited liability company doing business as TriMark Orange County ("Employer"), and Kristin K. Toth ("Employee").

WHEREAS, Employer, together with its subsidiaries and affiliates (Employer, together with such subsidiaries and affiliates, are referred to herein collectively as the "Employer Company Group", and each of the members of the Employer Company Group are individually referred to as a "Employer Company Group Member") sells, distributes and delivers equipment, parts, furniture, supplies and disposables, provides design and engineering services, and provides custom fabrication and project management services to the food service industry; and

WHEREAS, Employee wishes to become employed by an Employer Company Group Member; and

WHEREAS, Employer requires that Employee, as a condition of employment with an Employer Company Group Member, agree to certain terms and conditions, as set out in this Agreement; and

WHEREAS, Employee agrees to accept employment with such Employer Company Group Member on these terms and conditions;

NOW, THEREFORE, in consideration of an Employer Company Group Member proceeding with the employment of Employee, and the mutual promises and covenants set forth in this Agreement, Employer and Employee, intending to be legally bound, hereby agree as follows:

### Section 1. Confidentiality and Non-Disclosure

(a)  Confidential Information. Employee acknowledges that, during the course of Employee's employment with an Employer Company Group Member, Employee may learn, receive and/or develop confidential information concerning the businesses of the Employer Company Group, including writings, equipment, processes, drawings, reports, manuals, invention records, financial information, business plans, customer lists, the identity of or other facts relating to prospective customers, inventory lists, arrangements with suppliers and customers, computer programs, or other material embodying trade secrets, customer or product information or technical or business information of the Employer Company Group. All such information, other than any information that: (i) is in the public domain through no act or omission of the Employee; (ii) is made available to Employee by an independent third party not bound by a duty of confidentiality to the Employer Company Group; or (iii) is required by law to be disclosed, is referred to collectively as the "Confidential Information." During the term of Employee's employment and following the date on which Employee's employment with an Employer Company Group Member terminates, regardless of the reason for such termination, Employee shall not: (i) use or exploit in any manner the Confidential Information for any person, partnership, association, corporation, or other entity other than the Employer Company Group; (ii) remove any Confidential Information, or any reproduction thereof, from the possession or control of any Employer Company Group Member; or (iii) treat Confidential Information otherwise than in a confidential manner. All Confidential Information developed, created or maintained by Employee, alone or with others while employed by an Employer Company Group

Member or during the period that Employee provided services to any Employer Company Group Member as an employee, independent contractor, or otherwise, and all Confidential Information maintained by the Employee thereafter, shall remain at all times the exclusive property of the relevant Employer Company Group Member. Employee shall return to such Employer Company Group Member all Confidential Information and reproductions thereof, whether prepared by Employee or others, that are in Employee's possession immediately upon request and in any event upon the completion of employment by an Employer Company Group Member.

(b) <u>Acknowledgment of Harm and Reasonableness of Restrictions.</u> Employee acknowledges that any breach by Employee of this Agreement would cause the Employer Company Group irreparable injury and harm for which monetary damages would be inadequate. Employee also acknowledges that the restrictions set forth in this Agreement are fair and reasonable restrictions on Employee, are necessary for the protection of the Employer Company Group's legitimate business interests, including its Confidential Information and goodwill, are narrowly tailored in scope and duration to protect such interests, are reasonable with respect to subject matter, length of time and geographic area, and are consonant with the interests of the public. Accordingly, in the event of a breach or threatened breach of one or more of these paragraphs, Employee acknowledges that Employer will be entitled to temporary, preliminary and permanent injunctive relief restraining a breach or threatened breach of the Agreement. In the event that any restriction specified in this Agreement is determined in any judicial proceeding to be unreasonable, then the restriction shall be reduced so that each covenant may be enforced as to the activity, period of time and/or geographic area determined to be reasonable.

(c) Nothing in this agreement prohibits Employee from reporting an event that Employee reasonably and in good faith believes is a violation of law to the relevant law-enforcement agency, or from cooperating in an investigation conducted by such a government agency. This may include disclosure of trade secret or confidential information within the limitations permitted by the Defend Trade Secrets Act (DTSA). Employee is notified that under the DTSA, no individual will be held criminally or civilly liable under Federal or State trade secret law for disclosure of a trade secret (as defined in the Economic Espionage Act) that is: (A) made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney, and made solely for the purpose of reporting or investigating a suspected violation of law; or, (B) made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal so that it is not made public. Further, an individual who pursues a lawsuit for retaliation by an employer for reporting a suspected violation of the law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal, and does not disclose the trade secret, except as permitted by court order. Confidential Information does not include information lawfully acquired or created by a non-management employee of the Company about wages, hours or other terms and conditions of employment when used for purposes protected by §7 of the National Labor Relations Act (NLRA).

**Section 2. Non-Solicitation**

(a) <u>No Solicitation of Customers Using Confidential Information.</u> Employee acknowledges and agrees that the names, addresses, and contact information of the Company's customers and all other Confidential Information relating to those customers, have been compiled by an Employer Company Group Member at great expense and effort and represent a real asset of the Employer Company Group Member. Employee further understands and agrees that this information is deemed confidential by the Employer Company Group Member and constitutes its trade secrets. Employee understands that this information has been provided to Employee in

2

confidence, and agrees that the unauthorized use or disclosure of any Employer Company Group Member's trade secrets obtained by Employee during his/her employment constitutes unfair competition. Employee agrees not to, directly or indirectly, during or after termination of employment, make known to any person, firm, or company any information concerning any of the customers of an Employer Company Group Member which, as Employee acknowledges, is Confidential Information and constitutes trade secrets of the Employer Company Group Member. Nor shall Employee use any such Confidential Information to solicit, take away, or attempt to solicit or take away any of the business of the Employer Company Group Member's customers.

(b) No Solicitation of Employees. Employee understands and acknowledges that as an employee of an Employer Company Group Member that Employees owes certain duties to the Employer Company Group Member which would be violated by the solicitation and/or encouragement of employees to leave the employ of the Employer Company Group Member. Employee therefore agrees, either during my employment or for a period of one (1) year after employment has terminated, not to solicit any of the Employer Company Group Member's employees to induce such employees to terminate employment with the Employer Company Group Member. Employee agrees that any such solicitation during such period of time would constitute unfair competition.

### Section 3. Miscellaneous

(a) Conflicting Agreements. Employee acknowledges that neither the signing of this Agreement, nor the performance of Employee's obligations under this Agreement, is a breach of nor in conflict with any other agreement to which Employee is a party or is bound. Employee also acknowledges that Employee is not now subject to any contractual restrictions or court orders that could affect the performance of Employee's obligations under this Agreement. Employee agrees that Employee will not disclose to or use on behalf of an Employer Company Group Member any confidential or proprietary information of a third party without that party's consent.

(b) Costs and Fees. In the event of a breach or threatened breach of this Agreement, Employee agrees to pay the costs of suit and the reasonable attorneys' fees incurred by Employer or any Employer Company Group Member in seeking to enforce this Agreement. Employee acknowledges that nothing in this Agreement shall be construed as prohibiting Employer or any Employer Company Group Member from pursuing any remedy or relief available to Employer or any Employer Company Group Member for any breach or threatened breach of this Agreement.

(c) Entire Agreement. This Agreement constitutes the entire agreement between Employer and Employee regarding the subject matter of this Agreement and supersedes any and all prior negotiations, understandings and/or agreements, oral or written, between Employer and Employee regarding the subject matter hereof. However, this Agreement shall modify, reduce or replace any duties or obligations Employee owes any Employer Company Group Member under applicable statutory or common law.

(d) Modifications and Amendments. This Agreement may be modified or amended only by an agreement in writing signed by both parties to this Agreement.

(e) Assignment. Neither Employer nor Employee may assign this Agreement without the prior written consent of the other, provided, however, that Employer may assign its rights and obligations under this Agreement, without Employee's consent, to one of its affiliates or to any entity with which Employer shall effect a reorganization, consolidation or merger or to

which Employer transfers all or substantially all of its properties or assets. This Agreement shall inure to the benefit of and be binding upon Employer and Employee and each of their respective successors, executors, administrators, heirs, and permitted assigns.

(f)     Notices.  Any notice required or permitted to be given under this Agreement shall be in writing and shall be effective when delivered in person or deposited in the United States mail, postage prepaid, and addressed to Employer at its principal office and to the attention of the President or to Employee at Employee's last known address in the records of Employer.

(g)     Waiver.  The failure of either party to insist upon strict performance of a covenant or an obligation under this Agreement shall not be a waiver of that party's right to demand strict compliance in the future.  No consent or waiver, express or implied, to or of any breach or default in the performance of a covenant or obligation under this Agreement shall constitute a consent to or waiver of any other breach or default in performance of the same or any other covenant or obligation.  No term or provision of this Agreement may be waived unless such waiver is in writing and signed by the party against whom or which the waiver is sought to be enforced.

(h)     Governing Law.  This Agreement has been executed in the State of California and shall be construed and the obligations, rights and remedies of the parties shall be decided in accordance with the laws of the State of California without giving effect to its conflicts or choice of law principles.

(i)     Severability Clause.  In the event that any part or provision of this Agreement is held to be void or unenforceable by a court of competent jurisdiction, the validity of the remaining parts and provisions of the Agreement shall not be affected and shall remain in full force and effect.  The language of all parts of this Agreement shall be construed as a whole, according to its fair meaning, and not strictly for or against any party.

(j)     Headings.  Titles or headings contained in this Agreement are inserted only as a matter of convenience and for reference and do not, in any way, define, limit or extend the scope of the Agreement.  If there is any conflict between any title or heading and the text of the Agreement, the text shall control.

(k)     Acknowledgement of Understanding.  Employee acknowledges that Employee has carefully read and considered all the terms and conditions of this Agreement, that Employee has had the opportunity to consult with an attorney regarding this Agreement, and that Employee fully understands and is voluntarily entering into this Agreement.

*[Signature page follows]*

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date written above.

TRIMARK RAYGAL, LLC

By: _____

Print Name: ___Meda Crandall___

Title: __Sr. HR Business Partner__

Date: __10/6/18__

EMPLOYEE

By: _____

Printed Name: ___KRISTIN K TOTH___

Date: __10.5.2018__

5